IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MACK ADAMS, SR., as Franchisee of HAROLD'S CHICKEN #87,** | |
| Plaintiff, | |
| v. | |
| **CITY OF CHICAGO POLICE OFFICERS ANTHONY BRUNO, Star No. 12212; ANDREW JANIK, Star No. 10860; LT. TIM BICKHAM, Star No. 284; BRIAN SCHNIER, Star No. 1273; MICHAEL SLATTERY, Star No. 11102; SALVADOR LARA, Star No. 17286; UNKNOWN AND UNNAMED OFFICERS; and THE CITY OF CHICAGO,** | Case No. 10 C 2068<br><br>Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions, two of which are dispositive: (1) Plaintiff Mack Adams, Sr.'s Motion for Summary Judgment; (2) Defendant Officers' Joint Motion for Summary Judgment; and (3) Plaintiff's Motion for Sanctions under Rule 11 against Defendants.

## I.  FACTUAL BACKGROUND

This case arises out of a search of Harold's Chicken on February 12, 2010. Harold's is located at 7348 S. Stony Island, in a strip mall with a communal parking lot. Defendants claim many

drug and other illegal transactions occur in that parking lot. Plaintiff Mack Adams, Sr. ("Adams, Sr.") owns Harold's.

A locked door and a plexiglass window divide the restaurant into two chief areas: the lobby area which is open to the public, and the employee area, which contains freezers, a bathroom, an office, and other spaces. At the time of the incident, there were four employees behind the window.

After his shift as restaurant manager, Mack Adams, Jr. ("Adams, Jr.") went outside into the parking lot. Upon noticing police officers approaching, Adams, Jr. returned to the restaurant and went behind the locked door to the employee area. The parties dispute why and at what pace Adams, Jr. went inside.

After seeing Adams, Jr. depart, Defendant Officers Anthony Bruno ("Bruno") and Andrew Janik ("Janik") called for additional officers (including Defendants Sgt. Brian Schnier ("Schnier") and Officer Michael Slattery ("Slattery")). They then set up surveillance of the parking lot, allegedly to detect narcotics activity. Some time thereafter, Adams, Jr. returned to the parking lot and talked with Shaun Davis, who gave Adams, Jr. at least one "burned" DVD.

Ostensibly believing that they had just witnessed a hand-to-hand drug transaction, Bruno and Janik radioed Schnier and Slattery to apprehend Adams, Jr. Defendants contend that Adams, Jr. attempted to flee. They handcuffed him either in the doorway or

just inside the restaurant, and then sat him down in the restaurant lobby. The search of Adams, Jr. turned up the DVD, but no drugs or other contraband. A search of Davis' car turned up a large number of burned DVDs and CDs.

The parties disagree over what happened next. Defendants claim that Adams, Jr. made suspiciously contradictory statements about why he was heading into the restaurant – first claiming he was there to get chicken, then that he was the manager. Plaintiff claims that Adams, Jr. merely denied dealing drugs, and told Defendants that his father owned the restaurant. Then, Defendants claim, Adams, Jr. motioned to employees behind the counter, asking them to "hide it, hide it" or "flush it, flush it." They also claim that one employee left the officer's field of vision in response to those comments. Plaintiff claims that Adams, Jr. was asking employees to call his father. After that, Slattery turned Adams, Jr. to face away from employees, allegedly to stop him from talking to them. During this time, Officers asked Harold's customers to leave the restaurant (at least once they obtained their food) and refused to allow new customers to enter.

While this was going on, Defendants did a "license check" of the restaurant. Harold's did not have its business license on display to the public, as required by law. Officer Salvador Lara ("Lara") was called to the scene to issue the restaurant an Administrative Notice of Violation (an "ANOV") for failure to

display its license. (Lara also issued a second ANOV, evidently based on his misimpression that the DVD exchange had taken place inside. That ANOV was later dropped.)

Officers asked restaurant employees to unlock the door to the back, either so that officers could complete an investigatory search or so that an employee could sign the ANOVs. Over the phone, Plaintiff evidently instructed his employees not to comply, because Defendants had no warrant. The employees denied the officers entry. The parties agree than an employee told officers that Plaintiff was on the way to the restaurant. Plaintiff was evidently on his way home (to Indiana) to monitor the situation via his video feed from the restaurant security cameras. The parties disagree whether Plaintiff himself told Schnier that he was en route with a lawyer. Plaintiff never arrived at the restaurant.

Plaintiff called the Independent Police Review Authority and spoke with Investigator Margarita Galindo ("Galindo"). According to her deposition, she initially advised Plaintiff that they did not have to let the police search the back without a warrant. In a later call, evidently based on her belief that the Police needed to apprehend someone in the restaurant, she claims that she told Plaintiff to cooperate.

While waiting for Plaintiff to arrive, Schnier claims that he researched the legal justification for entering the back. He testified in deposition that at some point he found that authority

in some section of the Municipal Code of Chicago.  Schnier also called Lt. Tim Bickham ("Bickham"), who agreed to come to the scene.  Bickham waited until the midnight watch commander arrived, briefed her, and then joined the other Defendants at Harold's.  When Bickham arrived, he ordered employees to open the door.  They did not.  They also refused to provide identification to the officers, but at least one employee eventually gave officers her ID.  Employees also refused to sign the ANOV forms.

Bickham eventually picked open the locked door with a pocketknife and chain.  Once the door was open, Bickham and several other officers searched at least the employee work area, storage area, freezers, refrigerators, and food processing areas.  Exactly which officers searched the back remains contested.  The parties agree that Slattery remained in the front of the restaurant, guarding Adams, Jr.  No officers discussed getting a warrant.

The search turned up no drugs, guns or other contraband.  Officers found a laptop and blank CDs, but did not seize them.  After the search, the Defendants left.

The parties disagree over how long the incident took.  Defendants claim that no more than two hours passed from the time of Adams, Jr.'s arrest to the officers' departure.  Plaintiff contends that Defendants did not open the door until two hours after Adams, Jr. purportedly said "hide it" and/or "flush it."  The

parties also give varying estimates of how long it would have taken officers to obtain a warrant on the night of the incident.

In their depositions, the Defendant Officers expressed varying beliefs about whether evidence was about to be destroyed when they entered the rear area. Similarly, they expressed varying legal justifications for the search.

## II. PROCEDURAL BACKGROUND

Adams, Sr. initially filed this action on April 2, 2010. He amended his complaint on May 10, 2010. The Amended Complaint alleged an unreasonable search of the restaurant in violation of Plaintiff's Fourth Amendment rights and a supplemental state law claim for defamation. On April 1, 2011, Plaintiff filed the Parties' stipulated dismissal of the defamation count. Plaintiff's request to amend the complaint a second time was denied on April 14, 2011 and again on April 27, 2011. Thus, the only count currently pending before this Court is Plaintiff's claim for the unlawful search.

The parties present the Court with cross-motions for summary judgment. Plaintiff has also filed a Motion for Sanctions against defense counsel under Fed. R. Civ. P. 11 based on Defendants' Motion for Summary Judgment.

## III. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if, under applicable law, that fact may affect the outcome of the suit. *Id.* The Court is to construe all facts in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009).

On summary judgment, the Court does not weigh evidence or decide the truth of the matter; it simply determines whether there are genuine issues of material fact for trial. *Liberty Lobby*, 477 U.S. at 249. The moving party bears the burden of establishing the basis for its motion and the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they have met this burden, the non-moving party must present specific facts showing that there is, in fact, a genuine issue for trial. *Id.* at 324. This Court may draw inferences from the evidence, but need not draw every conceivable, speculative inference. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). A mere "scintilla" of evidence will not defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 525. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 129 S. Ct. at 2677 (citation omitted).

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Search and Seizure of Front Lobby

In addition to private homes, the Fourth Amendment protects commercial premises. *U.S. v. Sandoval-Vasquez,* 435 F.3d 739, 742 (7th Cir. 2006). In this case, the parties agree that the initial entry into the front lobby of the restaurant was lawful; no warrant is needed to enter any business, during normal business hours, which invites the public to enter. *U.S. v. Swart*, 679 F.2d 698, 701 -702 (7th Cir. 1982). That Defendants had an investigatory purpose does not convert the initial entry into a Fourth Amendment violation. *Maryland v. Macon*, 472 U.S. 463, 470 (1985).

In moving for summary judgment, Defendants did not read Plaintiff's Amended Complaint to include a claim for an unlawful search of the restaurant lobby. Def.'s Joint Mem. in Supp. of Summ. J. 5 n.1. However, Plaintiff did make such an allegation, Compl. ¶ 17. Furthermore, Defendants admitted in their answer that the Defendant Officers searched the lobby. *See, e.g.,* Lara and Schnier's Joint Answer to Am. Compl. at 4-5. Accordingly, this court considers the issue joined.

Plaintiff contends that, while the Defendants' initial entry into the restaurant was lawful, their decision to remain in the restaurant for two hours (and to ask customers to leave) exceeded the scope of the invitation to the public. This, they claim, violated the Fourth Amendment.

A number of courts have concluded that when investigating officers exceed the scope of a business' invitation to the public, they run afoul of the Fourth Amendment. *See Kozel v. Duncan*, 421 Fed.Appx. 843, 850 (10th Cir. 2011) (a "protracted""assertion of law enforcement authority over [an] entire [bar]" to administer sobriety tests fell "outside the limits of consent afforded the general public and violate[d] the Fourth Amendment."); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 196 (5th Cir. 2009) ("accepting a public invitation is permissible, but, absent cause, does not justify searches once inside the commercial establishment.") However, in *U.S. v. Sandoval-Vasquez*, the Seventh Circuit approved officers'"reasonable" entry under the invitation-to-the-public theory, even when they did not behave like ordinary customers. *U.S. v. Sandoval-Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006) (it was "not unreasonable" for officers to enter an open business with guns drawn and order occupants against a wall, because they knew that drugs were on the premises.).

Thus, this court must decide if, construing the evidence in the light most favorable to the Defendants, there is a question of fact regarding Defendants' reasonableness in remaining in the lobby for a significant period of time. Due to the contested issues of fact regarding, for example, how much time Defendants needed to issue the ANOV for failure to display a business license, Plaintiff's Motion for Summary judgment is denied.

## B. Entry and Search of the Locked Employee Area

With regard to the search of the locked, employee area of the restaurants, the parties agree that the warrantless search was presumptively unreasonable unless the officers had probable cause and were confronted with exigent circumstances. *Cf. U.S. v. Saadeh*, 61 F.3d 510, 516 (7th Cir. 1995). There was no consent.

Exigent circumstances exist when there is "a compelling need for official action and no time to secure a warrant." *U.S. v. Robles*, 37 F.3d 1260, 1263 (7th Cir. 1994). The government bears the burden of demonstrating that officers had an objectively reasonable belief that exigent circumstances existed when they entered. *Id.* The potential destruction of evidence, including narcotics, gives rise to exigent circumstances. *See U.S. v. Saadeh*, 61 F.3d 510, 516 (7th Cir. 1995) (collecting cases). However, the likely presence of narcotics is not, alone, sufficient to create exigent circumstances – there must also be sufficient facts to indicate that the destruction of evidence is likely. *See Jacobs v. City of Chicago*, 215 F.3d 758, 766-67 (7th Cir. 2000). The test for the lawfulness of a search is objective. *U.S. v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).

The question for this Court on summary judgment, then, is whether, construed for the Defendants, the facts at the moment the police searched the employee area could have lead a "reasonable, experienced agent to believe that [probable cause existed and that]

evidence might be destroyed before a warrant could be secured." *U.S. v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998). Whether officers had probable cause and exigent circumstances are both mixed questions of law and fact. *Richardson*, 208 F.3d at 629.

This Court concludes that contested issues of fact preclude it from finding, as a matter of law, that the Defendants acted unreasonably in searching the rear of the restaurant. Many facts remain in dispute which are integral to determining whether defendants reasonably could have believed that exigent circumstances existed. These questions include, but are not limited to, whether Adams, Jr. said "hide it, hide it" or "flush it, flush it" to store employees, and whether store employees were acting in a manner that would make the officers reasonably fear that evidence was about to be destroyed.

It is true, as Plaintiff points out, that several Officers expressed reservations as to whether destruction of evidence was likely or exigent circumstances existed. It is also true that, as Defendants point out, the subjective opinions of the officers do not control the Court's objective analysis. While those statements may constitute some evidence in the Court's analysis of what an objectively reasonable officer would have believed, they are not sufficient for this court to determine that Defendants were unreasonable as a matter of law at this time.

Because questions of fact remain as to the issue of exigent circumstances that mandate that this claim go to trial, the Court need not address arguments as to the existence or absence of probable cause at this time. Accordingly, Plaintiff's Motion for Summary Judgment is denied with regard to the search of the back of the restaurant.

## V. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

As a preliminary matter, Defendants contend that many facts are not in dispute because Plaintiff's denials are improper in form or improperly supported by record citations. Such an allegation would be justified against both parties' Local Rule 56.1 practice in this case. However, this Court can determine for itself which facts are contested, and which should be disregarded as improper or extraneous. *Cf. Jenkins v. Spaargaren*, No. 09 C 3453, 2011 WL 1356757, at *2 (N.D.Ill. April 7, 2011).

In addition, several Defendant Officers testified in deposition that some provision of the Chicago Municipal Code authorized their search. *See, e.g.,* Schnier Dep., 53-54, 63-64. The need to issue an ANOV for failure to display a business license appears to be uncontroversial. Beyond that, however, Defendants have not identified any code section on which officers purported to rely or explained the significance, if any, that such would have on this case. *Cf. New York v. Burger,* 482 U.S. 691 (1987).

Accordingly, any such arguments are waived, both as to substantive liability and as to Defendants' claims for qualified immunity.

**A  Defendants' Motion for Summary Judgment on the Merits**

Turning now to the substance of Defendant's Motion for Summary Judgment, many of Defendants' arguments are disposed of for reasons similar to those above.  Particularly when the record is taken in the light most favorable to the Plaintiff, significant questions of fact persist that prevent this court from concluding as a matter of law that the Defendants had probable cause to search the back of the restaurant or that exigent circumstances existed.

While the version of events that Defendants present in its Motion would almost certainly entitle the officers to summary judgment, theirs is a much contested narrative.  In their Reply, Defendants make a more measured attempt to consider the facts in a light favorable to Plaintiffs.  They argue that the officers may have reasonably, but mistakenly, believed that Adams, Jr. said "hide it" or "flush it" even if he only said "call Dad."  Because they made, at worst, a reasonable mistake as to probable cause and exigent circumstances, Defendants claim, they are entitled to summary judgment.

Defendants might be correct, if that were the only contested issue.  As noted above, however, it is not.  For example, the timing of the events on the night in question and the actions of employees in response to the police officers are both contested

issues which bear on whether officers could reasonably believe that they had probable cause and exigent circumstances.

Plaintiffs have made allegations, and supported them with some evidence, of a warrantless search in violation of the Fourth Amendment. Defendant Officers' Motion for Summary Judgment on the Merits is denied.

**B. Motion for Summary Judgment on Qualified Immunity Grounds**

Defendant Officers also raise the affirmative defense of qualified immunity on summary judgment. The doctrine of qualified immunity permits of reasonable mistakes; this Court must only determine whether the officers acted in a way that they reasonably believed to be lawful. *See Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Reher v. Vivo,* --- F.3d ---, 2011 WL 3926365, at *6 (7th Cir. 2011). As noted above, however, Defendants have waived their claims that officers reasonably believed that the Chicago Code gave them authority to search.

To survive summary judgment on qualified immunity grounds, a plaintiff must "(1) allege violation of a valid legal right and (2) demonstrate that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 -775 (7th Cir. 2005). The Court has discretion as to which of those prongs to address first. *Pearson v. Callahan,* 555 U.S. 223, 241 (2009). Although qualified immunity is an affirmative defense, the burden

of meeting this two-pronged test lies with the Plaintiff. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). However, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996).

In this case, the requirement that law enforcement officers obtain a warrant to search a non-public area of a business, absent exigent circumstances, was well established by the time of this incident. *See U.S. v. Saadeh*, 61 F.3d 510, 516 (7th Cir. 1995). The second prong inquiry, into whether it would be clear to a reasonable officer that the search was unlawful, is bound up in too many contested factual issues to decide as a matter of law. *Cf. Clash*, 77 F.3d at 1048 (where factual issues "draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made."). Plaintiffs may prove that a reasonable officer would have clearly understood that exigent circumstances no longer existed when the search began, or that officers were only entitled to secure the premises while they obtained a search warrant. *Cf. Segura v. United States,* 468 U.S. 796, 813-14 (1984). Accordingly, Defendant Officers' Motion for Summary Judgment on the grounds of qualified immunity is denied with respect to the back of the restaurant.

As for the search at the front of the restaurant, however, this Court will grant Summary Judgment on the grounds of qualified immunity to the Defendant Officers. As noted above, some courts have required officers who enter a business premises not to exceed the scope of the invitation to the public. As noted, however, the Seventh Circuit has found that entering a business with guns drawn and ordering occupants against a wall can be a reasonable application of the public invitation doctrine, depending on the circumstances. Plaintiff has not met his burden of demonstrating that Officers' entry and occupation of the lobby was clearly unlawful at the time of the incident. Accordingly, Defendant Officers' Motion for Summary Judgment based on qualified immunity is granted for their search and seizure of the front of the store.

### C. Claims Against Officer Slattery

The Seventh Circuit has concluded that "[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis in original). The question becomes, then, how much participation is necessary for §1983 liability to attach.

Defendants claim that because he did not go into the back of the restaurant, Slattery did not participate in the search and cannot be liable. The Fifth and Ninth Circuits have concluded that officers who do not physically perform an unconstitutional search,

but perform related essential functions (like guarding an arrestee) can be liable for an unconstitutional search and seizure. *See, e.g., Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004); *James ex rel. James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990). The Sixth Circuit has disagreed. *Ghandi v. Police Dep't of Detroit,* 747 F.2d 338, 352 (6th Cir. 1984). The Seventh Circuit does not appear to have addressed the issue directly. *See Fermaglich v. Indiana*, No. IP-01-1859, 2004 WL 2750262, at *32 (S.D. Ind., September 29, 2004) (collecting cases and applying the failure-to-intervene standard). It seems clear that, in the Seventh Circuit, officers who are mere bystanders are not liable under §1983 unless on a failure to intervene claim. *See Gossmeyer v. McDonald*, 128 F.3d 481, 493-495 (7th Cir. 1997) (officers who did not participate in a lawful office search were not liable); *Campbell v. City of Indianapolis*, No. 1:03-CV-0180, 2005 WL 2396925, at *6 (S.D.Ind. Dec. 28, 2005). They will be liable, however, if they are "present and fail[] to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens" and had both (a) reason to know that a constitutional violation was occurring and (b) a realistic opportunity to intervene. *Chavez v. Ill. State Police,* 251 F.3d 612, 652 (7th Cir. 2001).

The Defendants claim that Plaintiff did not sufficiently plead such a "quasi-failure to intervene claim." However, the Court

- 17 -

finds that the pleadings in this case were sufficient to put Slattery on notice that his conduct on the night in question was being subjected to a Fourth Amendment challenge. In any event, taking the evidence in the light most favorable to the Plaintiffs, Slattery was no mere bystander. Slattery: (a) arrested Adams, Jr.; (b) guarded him during the search; (c) purports to have heard Adams, Jr. say "hide it" and "flush it"; and (d) conveyed that information to at least one other officer. Plaintiffs have called his contentions the "central lie" in this case, and observations underlie Defendant's claims of probable cause. While Defendants' arguments that Slattery did not participate enough to warrant liability may ultimately persuade a jury, the extent of Slattery's involvement and responsibility in the search presents a contested issue of fact. *See Janusz v. City of Chicago*, --- F.Supp.2d ---, 2011 WL 2517233 (N.D.Ill. June 24, 2011).

Slattery, like the other officers, is entitled to summary judgment on qualified immunity grounds for his entry into the front of the restaurant, and for any search and seizure of the *lobby* area. It is the extent of his involvement in the allegedly unlawful search of the back of the restaurant that remains a question of fact for the jury. Accordingly, Defendant's Motion for Summary Judgment as to Officer Slattery's participation in the search of the back of the restaurant is denied.

## VI. MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11(b)

Plaintiff has moved for sanctions under FED. R CIV. P. 11(b), on the basis that Defendant's summary judgment motion was frivolous and inappropriately based entirely on contested facts. As noted above, Defendants did an underwhelming job of basing their initial Motion for Summary Judgment on uncontested facts. However, as Defendants noted in their Reply, their Reply in Support of their Motion for Summary Judgment did make an effort to argue from the facts construed in a light favorable to the Plaintiffs. Thus, while the Defendants' initial motion was not ideal, this Court cannot conclude that it was so baseless as to rise to the level of a Rule 11 violation. Plaintiff's Motion for Sanctions is therefore denied.

## VII. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Plaintiff's Motion for Summary Judgment is denied.

2. Defendants' Motion for Summary Judgment is granted as to the search and seizure of the front of the restaurant, but denied as to the search of the back of the restaurant.

3. Plaintiff's Motion for Sanctions is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

DATE: 10/6/2011